### WILLIAMS v. GERMAN-AMERICAN TRUST CO.

#### In re FORWARD LAUNDRY CO.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4166.

1. BANKRUPTCY ⊜⇒159—VOIDABLE PREFERENCE—CHATTEL MORTGAGE—RECORD.

Where no attack was made on a chattel mortgage, except that it was a voidable preference, it was no answer to that attack to show that the mortgage was otherwise valid, whether on or off the record, or whether against third parties, or between the original parties thereto; the trustee being empowered to attack a transfer as a voidable preference conceded valid on all other grounds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248, 262, 268–281; Dec. Dig. ⊜⇒159.]

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ⬅️168—VOIDABLE PREFERENCE—STATE LAWS.

By the express provisions of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9585]), the trustee may attack any transfer alleged to be voidable as a preference if made within the period fixed by law; it being only when he attacks a transfer or mortgage on other grounds that state laws apply as to the validity of the transfer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 234; Dec. Dig. ⬅️168.]

3. BANKRUPTCY ⬅️161—PREFERENCES—CHATTEL MORTGAGE—RECORD—STATUTORY AFFIDAVIT—FAILURE TO FILE—FOUR-MONTH PERIOD.

A state law provided for the acknowledgment and record of chattel mortgages and declared that if such a mortgage is given to secure more than $2,500, there should be annually recorded on the records of the county wherein the mortgage is recorded a sworn statement of the mortgagee, or one of them, showing that the mortgage was given in good faith to secure the payment of money given with the amount due thereon. *Held,* that where a chattel mortgage securing $4,500 was executed September 18, 1911, and filed for record on September 22d following, but no sworn statement was ever filed, and the mortgagee on April 25, 1913, when the mortgagor was insolvent, took possession of all the property covered by the mortgage, the four months provided by the bankruptcy law in which the mortgage could be attacked as a preference began to run, not from the date the mortgage was recorded, but from the date the mortgagee took possession.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⬅️161.]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Bill by Richard H. Williams, as trustee in bankruptcy of the Forward Laundry Company, against the German-American Trust Company. Decree for defendant, and complainant appeals. Reversed and remanded, with directions.

John A. Gordon, of Denver, Colo. (Andrew H. Wood, of Denver Colo., on the brief), for appellant.

Fred W. Parks, of Denver, Colo., for appellee.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. This action was commenced by bill in equity to recover of appellee the value of certain personal property alleged to have been transferred to it from the estate of the bankrupt, within four months prior to the filing of the petition in bankruptcy, under such circumstances as to constitute a voidable preference. Appellee moved to dismiss the bill for the reason that it did not state facts sufficient to constitute a cause of action. Equity Rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi). No objection was made that the action was brought in equity and not at law. The bill was dismissed, and appellant appeals.

The facts pleaded in the bill are substantially as follows: An involuntary petition in bankruptcy was filed against the Forward Laundry Company, May 20, 1913. June 13, 1913, the company was adjudged a bankrupt, and in due course thereafter appellant was appointed trustee of the estate of the bankrupt. September 18, 1911, the laundry

company executed and delivered to William F. Dieter its eight promissory notes, payable one every three months thereafter, and amounting in all to the principle sum of $4,500. To secure the payment of said notes on the same day, the laundry company executed and delivered to Dieter its chattel mortgage on certain personal property described in the bill of the alleged value of $6,000. The notes and chattel mortgage, although given to Dieter, were in fact the property of appellee, and Dieter subsequent to the execution of the notes and mortgage indorsed and transferred the same to it. The mortgage was filed for record September 22, 1911. That no sworn statement of the mortgagee or any one in its behalf that said mortgage was given in good faith to secure the payment of the sum of money mentioned therein, or that said sum of money was still unpaid, or how much thereof, if any, remained unpaid, was ever recorded on the records of the county of Denver where said chattel mortgage was recorded, nor was any such sworn statement ever filed or offered for record. That on April 25, 1913, the laundry company was insolvent, and the aggregate of its property at a fair valuation was not sufficient in amount to pay its debts, and the appellee at that time knew and had reason to believe and know that said laundry company was insolvent. That on said April 25, 1913, appellee fraudulently took possession of all the goods and chattels mentioned in said chattel mortgage, and the said laundry company suffered and permitted the appellee to take such possession under said mortgage, and transferred the goods and chattels mentioned therein to appellee; that appellee foreclosed said chattel mortgage and appropriated the proceeds of the sale to its own use and benefit and to the payment in full of its debt against the laundry company. That the effect of the taking and selling of said goods and chattels and the appropriation of the proceeds thereof by appellee toward the payment of its debt enabled said appellee to obtain a greater percentage of its debt than any other of the creditors of the said laundry company of the same class. That the taking, selling, and appropriation of the goods and chattels described in the mortgage operated as a preference in favor of the appellee, and appellee at the time had reasonable cause to believe that the taking, selling, and appropriation of said goods and chattels under said mortgage toward the payment of its debt would effect a preference in its favor over other creditors of the laundry company. That the property sold under said mortgage had passed into the hands of innocent purchasers, and the specific property could not be recovered. It was prayed by the bill that the chattel mortgage be declared void, and that the transfer of the property to the possession of appellee be adjudged and decreed to be a voidable preference, and that appellant recover from appellee the value of said goods and chattels. For the purposes of this appeal, the above facts stand admitted.

[1] We think much confusion exists on the part of counsel for appellee as to the nature of the attack made upon the alleged transfer. No attack is made upon it, except that it constituted a voidable preference. Hence it does not answer this attack to show that the mortgage was otherwise valid whether on or off the record, or whether against third parties or between the original parties thereto. The trustee can attack a transfer as a voidable preference concededly valid on all other

grounds. The real question, so far as the record of the transfer is concerned, is, Did the four months in which it could be attacked commence to run from September 22, 1911, the date the mortgage was recorded, or April 25, 1913, the date that appellee took possession of the mortgaged property? If from the former date the bill was rightly, if from the latter date wrongly, dismissed.

[2] This statement of the case also does away with much apparent confusion as to the power of the trustee to attack the transfer. By the express authority of the bankruptcy law, the trustee can attack any transfer alleged to be voidable as a preference if made within the period fixed by law. It is only when the trustee attacks a transfer or mortgage on other grounds that state laws and decisions apply as to the validity of the transfer.

[3] It is the claim of counsel for appellant that the failure of appellee to file a sworn statement required by the law of Colorado, as alleged in the bill, rendered the recording of the chattel mortgage void to such an extent that the period of four months must be computed from the date that appellee actually took possession, namely, April 25, 1913. The appellant attacking the transfer as a preference, the only point in controversy is as to the date from which the four months must be computed. The law of Colorado provides for the acknowledgment and recording of chattel mortgages. It also provides that a chattel mortgage after it is recorded, if in good faith, shall be good and valid from the time of recording until the maturity of the last installment of the mortgage indebtedness, not exceeding five years where the indebtedness is more than $2,500, and not more than $20,000. The law then provides as follows:

"And provided further, that if such mortgage be given to secure a sum greater than twenty-five hundred (2,500) dollars, there shall be recorded annually on the records of the county wherein such mortgage shall have been recorded, a sworn statement of the mortgagee, or one of the mortgagees, if there be more than one, showing:

"First. That said mortgage was given in good faith to secure the payment of the sum of money mentioned therein.

"Second. That said sum of money is still unpaid; or if a portion thereof shall have been paid, then how much thereof, if any, remains unpaid."

It is conceded that appellee did not comply with this proviso. In the case of Burchinell v. Gorsline, 11 Colo. App. 22, 52 Pac. 413, the Court of Appeals of Colorado used the following language in reference to this proviso:

"But if the debt secured exceeds the sum of $2,500, its validity by virtue of its record continues only until the time when the record of the first sworn statement required by the statute is due. The record of that statement is by the terms of the statute a necessary condition of its further validity; and upon a failure to make such record, its virtue is exhausted. If the statement is duly recorded, the mortgage remains in force until the next statement is due; and so the effect of the record of each annual statement is to preserve the vitality of the mortgage until the time when, by the terms of the statute, the succeeding one should be recorded. * * * Its language is peremptory, and the recording of the sworn statement within the proper time is essential to the continued validity of the mortgage. Knowledge, on the part of a person acquiring an interest in the property, of the existence of a prior mortgage, the affidavit necessary to the preservation of which had not been record-

ed, could not prejudice his right in the property. It would amount only to knowledge of an instrument which had become void as to him."

It is true in the case cited, which was a contest between the sheriff and a mortgagee, the court thought a delay of 17 days after the expiration of one year from the filing of the mortgage did not invalidate the mortgage; the court seeming to be of the opinion that, as the statute did not fix any positive date upon which the sworn statement should be filed, a reasonable time might be allowed in which to comply with the law. Conceding that this is the true construction of the statute, it appears in the record before us that there was a delay of seven months after the expiration of one year from the time the mortgage was recorded. It was recorded September 22, 1911, and possession was not taken until April 25, 1913. There must be a limit to the time within which a mortgagee may comply with the statute, or else the statute itself becomes of no force or effect. If the mortgagee may neglect to file the sworn statement for seven months, why not for one year and why not for five years; where is the line to be drawn? On the other hand, if the mortgagee may record his mortgage and neglect to comply with the statute for five years, and then at the end of that time seize the mortgaged property at the time when the mortgagor has become insolvent, then the bankrupt law is defeated, if he can simply point to the date when the mortgage was recorded and show the trustee in bankruptcy that the four-month period has elapsed. We do not think any such reasoning ought to be adopted as would bring about either one of these results or both. We think the delay in the case at bar to file the sworn statement, as required by law, was so unreasonable that the court must declare, as matter of law, that the record of the mortgage ceased to have any force or validity. The taking possession of the mortgaged property by appellee was, under the Colorado statute, equivalent to the recording of the mortgage, but the prior record of the mortgage having been rendered invalid by the failure of the appellee to comply with the law, the period of four months within which the trustee could attack the transfer as a preference must be figured from the date of taking possession, April 25, 1913.

It was said by the Supreme Court of Colorado in Ferris v. Chambers, 51 Colo. 368, 117 Pac. 994, as follows:

"Provisions of a statute, rendering a chattel mortgage effective, even though the mortgagor retains possession of the property, are statutory, and if the statute prescribes that, in order to preserve the lien of a mortgage with the property in possession of the mortgagor, something shall be done, that thing must be done as prescribed by the statute."

An examination of the decisions in states having similar provisions in their statutes as to the filing for record of affidavits or statements, whether the purpose of the affidavit or statement is to preserve, renew, or extend the chattel mortgage, convinces that it is generally held that a failure to comply with such provisions renders the chattel mortgage void. Pleasonton v. Johnson, 91 Md. 673, 47 Atl. 1025; Milburn Mfg. Co. v. Johnson, 9 Mont. 537, 24 Pac. 17; Hanes v. Tiffany, 25 Ohio St. 549; Blandy v. Benedict, 42 Ohio St. 295; Benedict v. Peters, 58 Ohio St. 527, 51 N. E. 37; Lockwood & Co. v. Crawford, 29 Kan.

286; Swiggett v. Dodson, 38 Kan. 702, 17 Pac. 594; Porter v. Parmley, 52 N. Y. 185; and Marsden v. Cornell, 62 N. Y. 215.

We do not cite these cases for the purpose of showing that the chattel mortgage in this case was void outside of the question of preference, but simply to show that the record of the mortgage in question had ceased to be of validity for the purpose of fixing the date from which the four months provided by law must be computed. The bill otherwise stating a cause of action, it results that the judgment dismissing the same must be reversed and the case remanded, with directions to allow the appellee to answer the same, if it is so advised; and it is so ordered.